**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

**IN RE:** **CASE NO.: 25-19949**

**CHAPTER 13**

**FREDERICK MORGAN HUMBERT**
**DEBTOR.**
_______________________________________/

**MOTION FOR AUTHORITY TO INCUR SECURED DEBT FOR THE PURPOSE OF ALLOWING THE LENDER AND THE DEBTOR TO MODIFY THE TERMS OF AN EXISTING SECURED LOAN FOR REAL PROPERTY AND NOTICE OF OPPORTUNITY TO OBJECT**

Pennymac Loan Services, LLC, ("Secured Creditor"), by and through undersigned counsel, moves this Court for authority to incur secured debt for the purpose of entering into a Loan Modification (the "Loan Modification") and move this Court to approve loan modification between Secured Creditor and Frederick Morgan Humbert (the "Debtor") , and submits the following:

1. The address of the real property at issue is 814 Holden Road, Frederick, MD 21701 (the "Property").

2. The holder of the secured claim is Secured Creditor.

3. On or about July 2, 2020, the Debtor, Frederick M. Humbert and spouse Kathleen Humbert, acquired the Interest in the property by and through the Warranty Deed, recorded on August 7. 2020in Liber Book 13963, Page 44, in the Circuit Court for Frederick County, MD. As part of the transaction, the Debtor, Frederick M. Humbert and spouse Kathleen Humbert, executed a Deed of Trust in the principal amount of $664,135.00, recorded on September 11, 2023, in Liber Book 16594, Page 333, in the Circuit Court for Frederick County, MD. A true and accurate copy of the Warranty Deed and Deed of Trust are attached as Exhibit "B."

4. Debtor applied for and was approved for a Loan modification with Pennymac Loan Services, LLC.

5. The proposed loan modification agreement (hereinafter, the "Agreement") was executed by the Debtor attached hereto. The Agreement contains material terms as follows:

(a) the principal balance shall be $752,201.04;

(b) the new monthly payment amount is $4,138.71 and the effective date is June 1, 2026;

(c) the rate of interest on the Interest Bearing Principal Balance Loan Modification Agreement amount $752,201.04 is modified to a rate of 6.000% per annum through the date of loan maturity;

(d) the loan term maturity date is extended to May 1, 2066 ("Maturity Date").

6. The new monthly principal and interest payment amount of the modified secured claim is $4,366.46. This amount includes real estate taxes and hazard insurance of $227.75 to be escrowed by the holder of the modified secured claim. This escrow component may adjust periodically and monthly escrow amount information will be provided to the Debtor.

7. A true and accurate copy of the Loan Modification is attached hereto as Exhibit "A."

8. Debtor will be required to continue making all post modification payments, as of the effective date of the modification agreement, on or before their due date until such time as court approval is granted and the modification is finalized. Failure to maintain post modification payments may result in the modification being denied by the servicer, upon filing proper notification with this Honorable Bankruptcy Court.

9. The Agreement described is in the best interest of the Debtor, the creditor, and the bankruptcy estate. The Agreement would assist the Debtor in effectively reorganizing debt by lowering the

Debtor's monthly mortgage payment obligation and by allowing Debtor to retain the Property in an affordable manner.

10. That Secured Creditor is aware as the holder of the modified secured claim that it must either file an amended proof of claim or withdraw the filed proof of claim within 30 days of the entry of an order approving the loan modification.

11. Secured Creditor seeks this Court's approval as a condition to the effectiveness of the agreement. No parties will be prejudiced by approval of this agreement.

**WHEREFORE,** Pennymac Loan Services, LLC., respectfully requests this Honorable Court enter an Order Approving Loan Modification, and for any such further relief as this Honorable Court deems just and proper.

Respectfully submitted,

*/s/ Chetan Goapl*

Chetan Gopal, MD Federal Bar No. 31096
ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC
13010 Morris Road, Suite 450
Alpharetta, Georgia 30004
Phone: (470) 321-7112
Email: cgopal@raslg.com

***Counsel for Secured Creditor***

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

**IN RE:** **CASE NO.: 25-19949**

**CHAPTER 13**

**FREDERICK MORGAN HUMBERT**

**DEBTOR.**
**______________________________________/**

**NOTICE OF MOTION FOR AUTHORITY TO INCUR SECURED DEBT FOR THE PURPOSE OF ALLOWING THE LENDER AND THE DEBTOR TO MODIFY THE TERMS OF AN EXISTING SECURED LOAN FOR REAL PROPERTY AND NOTICE OF OPPORTUNITY TO OBJECT**

**PLEASE TAKE NOTICE** that Select Portfolio Servicing, Inc., has filed the foregoing Motion and related papers with the Court for authority to have the Debtor incur secured debt for the purpose of modifying the terms of an existing secured loan for real property.

If you do not want the court to grant the motion, or if you want the court to consider your views on the motion, then by **September 23, 2026** you or your lawyer must file a written response with the Clerk of the Court explaining your position and mail a copy to:

Chetan Gopal, Esq., MD Federal Bar No. ___
ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC
13010 Morris Road, Suite 450
Alpharetta, Georgia 30004

and to:

Timothy P. Branigan, Chapter 13 Trustee
9891 Broken Land Parkway, Suite 301
Columbia, MD 21046

If you mail rather than deliver your response to the Clerk of the Court for filing, you must mail early enough so that the Court will receive it by the response deadline.

**IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the Notice and Motion for Authority to Incur Secured Debt was mailed first class, postage paid, on September 9, 2026 to:

**Debtor**
Frederick Morgan Humbert
814 Holden Road
Frederick, MD 21701

**I HEREBY CERTIFY** that a copy of the Notice and Motion for Authority to Incur Secured Debt was uploaded through the Court's ECF System at the e-mail address registered with the Court on September 9, 2026, to:

**Debtor's Counsel**
Willaim A. Grafton, Esquire
Grafton Firm, LLC
920 Providence Road, Suite 100
Towson, MD 21286
Email: wgrafton@graftonfirm.com

**Trustee**
Timothy P. Branigan, Chapter 13 Trustee
9891 Broken Land Parkway, Suite 301
Columbia, MD 21046
Email: cmecf@chapter13maryland.com

And to those on the attached creditor matrix.

_/s/_Chetan Gopal ___________________
Chetan Gopal, Esq.

Label Matrix for local noticing
0416-0
Case 25-19949
District of Maryland
Greenbelt
Tue May 12 12:23:01 EDT 2026

Capital One Auto Finance, a division of Capi
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Eastchurch Homeowners Association, Inc.
Rees Broome
7101 Wisconsin Ave., Suite 1201
Bethesda, MD 20814-4867

PERITUS PORTFOLIO SERVICES II, LLC
PO BOX 1149
Grapevine, Tx 76099-1149

PennyMac Loan Services, LLC
Robertson, Anschutz, Schneid, Crane
13010 Morris Road, Suite 450
Alpharetta, GA 30004-2001

American Profit Recovery
34505 W. 12 Mile Road
Farmington Hills, MI 48331-3258

American Profit Recovery
Attn: Bankruptcy
34505 W 12 Mile Road #333
Farmington Hills, MI 48331-3288

Benjamin Thomas Peters
10461 Mill Run Cir
Ste 550
Owings Mills, MD 21117-5555

Cap1/kohls Dept Store
Po Box 31293
Salt Lake City, UT 84131-0293

Capital One Auto Fiance
a division of Capital One, N.A. Departme
c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave Dept. APS
Oklahoma City, OK 73118-7901

Capital One Auto Finance
Capital One Auto Finance, Attn: Bankrupt
7933 Preston Rd
Plano, TX 75024-2302

Capital One Auto Finance
Credit Bureau Dispute
Plano, TX 75025

(p)STATE OF MARYLAND CENTRAL COLLECTION UNIT
ATTN OFFICE OF THE ATTORNEY GENERAL
300 W PRESTON ST RM 407
BALTIMORE MD 21201-2309

Christopher McGrady
Grafton Firm, LLC
920 Providence Rd, Suite 100
Towson, Maryland 21286-2976

City of Frederick
101 N Court St
Frederick, MD 21701-5440

City of Frederick Maryland
Parking Department
2 South Court Street
Frederick, MD 21701-5585

(p)COMPTROLLER OF MARYLAND
BANKRUPTCY UNIT
7 ST PAUL STREET SUITE 230
BALTIMORE MD 21202-1626

Concora Credit (Indigo)
PO Box 96541
Charlotte, NC 28296-0541

Credit One Bank
PO Box 98875
Las Vegas, NV 89193-8875

EZ Pass Maryland
PO Box 141578
Austin, TX 78714-1578

Eastchurch Homeowner's Association, Inc
7101 Wisconsin Ave
Ste 1201
Bethesda, MD 20814-4867

Flagship Credit Acceptance
Attn: Bankruptcy
Po Box 3807
Coppell, TX 75019-5877

Flagship Credit Acceptance
Po Box 3807
Coppell, TX 75019-5877

Frederick Police Department, FARU
100 West Patrick Street
Frederick, MD 21701-5578

(p)HALSTED FINANCIAL SERVICES LLC
PO BOX 828
SKOKIE IL 60076-0828

Harley Davidson Financial
3850 Arrowhead Drive
Carson City, NV 89706-2016

Harley Davidson Financial
Attn: Bankruptcy
Po Box 22048
Carson City, NV 89721-2048

Harley-Davidson Credit Corp
PO Box 9013
Addison, Texas 75001-9013

Internal Revenue Service
ATTN: INSOLVENCY UNIT
PO Box 7346
Philadelphia, PA 19101-7346

Jeffrey Patrick McEvoy, Esq.
Eight West Third Street
Frederick, MD 21701-5331

Joel Kitaguchi
8009 Solley Rd
Glen Burnie, MD 21060-8608

Joel Kitaguchi
c/o C. Edward Hartman, III
116 Defense Highway, Suite 300
Annapolis, Maryland 21401-7047

LENDMARK FINANCIAL SERVICES, LLC
2118 USHER STREET COVINGTON GA 30014

LVNV Funding LLC/Resurgent Capital Servi
C/o Resurgent Capital Services
Greenville, SC 29602

LVNV Funding LLC/Resurgent Capital Servi
Resurgent Correspondence, Attn: Bankrupt
Po Box 1269
Greenville, SC 29602-1269

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Law Offices of Jeffrey Patrick McEvoy, P.C.
c/o Brian E. Barkley, Esq
51 Monroe Street, Suite 1407
Rockville, MD 20850-2409

Lendmark Financial Ser
7526 West Broad St
Richmond, VA 23294-3608

MARINER FINANCE
8110 CORPORATE DR
NOTTINGHAM, MD 21236-5034

MVA
Insurance Compliance Division
6601 Ritchie Highway NE
Glen Burnie, MD 21060

Mariner Finance
8211 Town Center Dr
Nottingham, MD 21236-5904

Mariner Finance
Attn: Bankruptcy
8211 Town Center Drive
Nottingham, MD 21236-5904

Maryland Department of Transportation
Motor Vehicle Administration
6 St Paul St
Baltimore, MD 21202-6806

Midland Credit Management, Inc.
PO Box 2037
Warren, MI 48090-2037

Midland Credit Mgmt
350 Camino De La Reina
San Diego, CA 92108-3007

Midland Credit Mgmt
Attn: Bankruptcy
Po Box 939069
San Diego, CA 92193-9069

Montgomery County
Traffic Enforcement
PO Box 10549
Rockville, MD 20849-0549

PennyMac Loan Services, LLC
PO Box 2410
Moorpark, CA 93020-2410

PennyMac Loan Services, LLC
PennyMac Loan Services, LLC, Attn: Bankr
Po Box 514387
Los Angeles, CA 90051-4387

PennyMac Loan Services, LLC
Po Box 514387
Los Angeles, CA 90051-4387

Robertson, Anschutz, Schneid, Crane and
Partners1135
11350 McCormick Rd
St 302
Hunt Valley, MD 21031-1002

Santander Bank
P.o. Box 961211
Fort Worth, TX 76161-0211

Santander Bank, N.A.; as
servicer for Santander Consumer USA Inc.
P.O. Box 560284
Dallas, TX 75356-0284

Truist Bank
Attn: Bankruptcy
214 N Tryon St Ste 3
Charlotte, NC 28202-1023

Truist Bank
PO Box 1847 / 100-50-01-51
Wilson, NC 27894-1847

Truist Bank
Po Box 849
Wilson, NC 27894-0849

Westlake - C/O Peritus Portfolio Services II
P.O. Box 1149
Grapevine, TX 76099-1149

Westlake Portfolio Management
4751 Wilshire Bvld
Los Angeles, CA 90010-3827

Westlake Portfolio Management
Westlake Portfolio Management, Attn: Ban
P.O. Box 76809
Los Angeles, CA 90076-0809

Christopher John McGrady
Grafton Firm, LLC
920 Providence Road
Suite 100
Towson, MD 21286-2976

Frederick Morgan Humbert
814 Holden Rd
Frederick, MD 21701-3409

Timothy P. Branigan
9891 Broken Land Parkway
Suite 301
Columbia, MD 21046-3002

William A Grafton
Grafton Firm, LLC
920 Providence Road
Ste 100
Towson, MD 21286-2976

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Central Collections Unit
300 W Preston Street
Baltimore, MD 21201

Comptroller of Maryland
Revenue Administration Division
110 Carroll Street
Annapolis, MD 21411

Halstead Financial
8001 Lincoln Ave Ste 500
Skokie, IL 60077

(d)State of Maryland Central Collection Unit
300 West Preston Street 5th Floor
Baltimore, MD 21201

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Capital One Auto Finance, a division of Ca
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(d)Joel Kitaguchi
8009 Solley Rd
Glen Burnie, MD 21060-8608

End of Label Matrix

| | |
|---|---|
| Mailable recipients | 62 |
| Bypassed recipients | 2 |
| Total | 64 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
*Greenbelt Division*

| | |
|---|---|
| IN RE:<br>**FREDERICK MORGAN HUMBERT**,<br>*Debtor* | **Case No. 25-19949--mcr**<br><br>**Chapter 13** |

## ORDER AUTHORIZING LOAN MODIFICATION

Upon a motion and/or notice by the secured creditor for authority to enter into an agreement to modify an existing secured loan for real property, it is by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Debtor and secured creditor are authorized to enter into a modification of an existing secured loan agreement according to the terms set out in the motion; and it is further,

ORDERED, that the terms of the confirmed plan in this case are not hereby modified, and any plan modification must be effected by separate motion and order pursuant to section 1329 of the Bankruptcy Code; Debtor will be required to continue making all post modification payments, as of the effective date of the modification agreement, on or before their due date until

such time as court approval is granted and the modification is finalized. Failure to maintain post modification payments may result in the modification being denied by the servicer, upon filing proper notification with this Honorable Bankruptcy Court. and it is further,

ORDERED, that this order does not alter or affect the status or priority of any other existing lien(s) on the real property that is the subject of the loan modification; and it is further,

ORDERED, that upon the finalization of the loan modification, the Debtor shall immediately transmit a copy of the signed loan modification agreement to the Chapter 13 Trustee; and it is further,

ORDERED, that the Chapter 13 Trustee is permitted to cease distributing plan payments to the secured creditor.

Copies to:

Frederick Morgan Humbert
814 Holden Road
Frederick, MD 21701
***Debtor***

Chetan Gopal, MD Federal Bar No. 31096
ROBERTSON, ANSCHUTZ, SCHNEID, CRANE
& PARTNERS, PLLC
13010 Morris Road, Suite 450
Alpharetta, Georgia 30004
***Counsel for Creditor***

Timothy P. Branigan, Chapter 13 Trustee
9891 Broken Land Parkway, Suite 301
Columbia, MD 21046
Email: cmecf@chapter13maryland.com
***Chapter 13 Trustee***

**END OF ORDER**

# Exhibit A

[redacted]

# MOD EXECUTED FINAL DOCS

FREDERICK M HUMBERT
814 HOLDEN RD
FREDERICK, MD 21701-3409

**This document prepared by:**
**PENNYMAC LOAN SERVICES**
**6101 CONDOR DRIVE, SUITE 200**
**MOORPARK, CA 93021**

**After recording please return to:**
**SERVICELINK**
**ATTN: LOAN MODIFICATION SOLUTIONS**
**320 COMMERCE, SUITE 100**
**IRVINE, CA 92602**

*[Space Above This Line For Recording Data]*

**Original Principal Amount $664,135.00**
**Unpaid Principal Amount $671,586.62**
**New Principal Amount $752,201.04**
**Taxable Cap Amount $80,614.42**

[redacted]

**Investor Case No. 131360774060**

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)
### (Principal Residence)

This Loan Modification Agreement ("Agreement"), made this **17th** day of **April, 2026**, between **FREDERICK M. HUMBERT AND KATHLEEN HUMBERT** ("Borrower"), whose address is **814 HOLDEN ROAD, FREDERICK, MD 21701-3409**, **Pennymac Loan Services, LLC** ("Lender"), whose address is **6101 Condor Drive, Moorpark, CA 93021**, amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **August 25, 2023** and in the amount of **$664,135.00** and recorded on **September 11, 2023** in Book, Volume, or Liber No. **16594**, at Page **333** (or as Instrument No. **N/A**) , of the **Official** Records of **FREDERICK,MARYLAND** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:



[redacted]

**814 HOLDEN ROAD, FREDERICK, MD 21701**
[Property Address]
the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Property Tax ID No.: **02-594464**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **June 1, 2026**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$752,201.04**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **6.000%**, from **May 1, 2026**. Borrower promises to make monthly payments of principal and interest of U.S. **$4,138.71**, beginning on the **1st** day of **June, 2026**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **6.000%** will remain in effect until principal and interest are paid in full. If on **May 1, 2066** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.



[redacted]

5. Borrower understands and agrees that:

a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e) Borrower agrees that they will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided for signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.



[redacted]

By checking this box, Borrower also consents to being contacted by text messaging ☐.

g) That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

6. Borrower understands that the Note and Security Instrument will not be modified unless and until (i) the Lender accepts this Agreement by signing the Loan Modification Agreement, (ii) the Modification Effective Date (as defined in Section 3) has occurred, and (iii) Bankruptcy Court approval, where applicable, has been obtained and Borrower has timely made all required trial plan payments through Court approval.

7. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

_______________________________ Date: 5/22/2026
Borrower - FREDERICK M. HUMBERT

_______________________________ Date: 5/22/2026
Borrower - **KATHLEEN HUMBERT *SIGNING SOLELY TO ACKNOWLEDGE THIS AGREEMENT, BUT NOT TO INCUR ANY PERSONAL LIABILITY FOR THE DEBT**



[redacted]

**ACKNOWLEDGMENT**

State of Maryland §
County of Frederick §
(or City of Baltimore) §

On this the 22 day of May, 2026, before me Frederick M Humbert, Kathleen Humbert, personally appeared **FREDERICK M. HUMBERT AND KATHLEEN HUMBERT**, known or identified to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he (or they) executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

Signature of Officer

Darren M. Fitzwater
Printed Name

Notary Public
Title of Officer

DARREN M FITZWATER NOTARY PUBLIC FREDERICK COUNTY, MD

(Seal) My Commission Expires: 11/26/26



[redacted]

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**Pennymac Loan Services, LLC**

______________________________ (Seal)
-Lender

By: Tabitha Adamson
Vice President

MAY 2 7 2026

Date of Lender's Signature

ACKNOWLEDGMENT SEE ATTACHED

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __________ §
§
County of __________ §

On ______________________ before me, ______________________, Notary Public personally appeared ______________________, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he/she executed the same in his/her authorized capacity on behalf of the corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

______________________
Notary Public

______________________
Printed Name

(Seal) My Commission Expires: __________



[redacted]

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Ventura )

On 05/27/2026 before me, Wendy Powers , Notary Public
(insert name and title of the officer)

personally appeared Tabitha Adamson,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

WENDY POWERS
Notary Public - California
Ventura County
Commission # 2413931
My Comm. Expires Sep 20, 2026

Signature ______ (Seal)

EXHIBIT A

BORROWER(S): FREDERICK M. HUMBERT AND KATHLEEN HUMBERT

[redacted]

LEGAL DESCRIPTION:

STATE OF MARYLAND, COUNTY OF FREDERICK, AND DESCRIBED AS FOLLOWS:

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF FREDERICK, STATE OF MARYLAND: BEING KNOWN AND DESIGNATED AS LOT 304, FINAL PLAT, SECTION 4, PLAT 1, LOTS 158-165, 297-310, AND OPEN SPACE, NICODEMUS PND - EASTCHURCH, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK NO. 98, FOLIO 89, LAND RECORDS OF FREDERICK COUNTY, MARYLANDBEING THE SAME PROPERTY AS CONVEYED FROM KATHLEEN GASSON, BY THEODORE CONLEY, HER ATTORNEY IN FACT AND THEODORE CONLEY TO FREDERICK M.HUMBERT AND KATHLEEN HUMBERT, AS TENANTS BY THE ENTIRETY UNTO THE SURVIVOR OF THEM, HIS OR HER HEIRS AND ASSIGNS, IN FEE SIMPLE AS SET FORTH IN DEED BOOK 13963 PAGE 44 DATED 07/02/2020, RECORDED 08/07/2020, FREDERICK COUNTY, MARYLAND.

Property Tax ID No.: 02-594464

ALSO KNOWN AS: 814 HOLDEN ROAD, FREDERICK, MD 21701



[redacted]

# Exhibit B

Lawyers Signature Settlements, LLC
File No. **LS-9035T20**
Tax ID # **02-594464**

APPROVED FOR TRANSFER
Treasurer of Frederick Co., MD
Per: _____ Date: 8-5-20
Taxes-Water/Sewer-PAID
Recordation Tax Pd. $ 7080.00

2813

This Deed, made this 2nd day of July, 2020, by and between **Kathleen Gasson, by Theodore Conley, her Attorney in Fact** and **Theodore Conley**, GRANTORS, and **Frederick M. Humbert** and **Kathleen Humbert**, GRANTEES.

## Witnesseth –

That in consideration of the sum of Five Hundred Ninety Thousand and 00/100 Dollars ($590,000.00), which includes the amount of any outstanding Mortgage or Deed of Trust, if any, the receipt of which is hereby acknowledged, the said Grantors do hereby grant and convey to the said Grantees, as tenants by the entirety unto the survivor of them, his or her heirs and assigns, in fee simple, all that lot of ground situate in the County of Frederick, State of Maryland and described as follows, that is to say:

Being known and designated as Lot 304, Final Plat, Section 4, Plat 1, Lots 158-165, 297-310, and Open Space, Nicodemus PND – "Eastchurch", according to the plat thereof recorded in Plat Book No. 98, Folio 89, Land Records of Frederick County, Maryland.

BEING the fee simple property which, by Deed dated August 23, 2018, and recorded in the Land Records of the County of Frederick, Maryland, in Liber 12630, Folio 422, was granted and conveyed by Calatlantic Group, Inc., a Delaware Corporation, as successor by Merger to the Ryland Group, Inc., a Maryland Corporation unto Kathleen Gasson Conley and Theodore Conley.

ALSO BEING PART OF the fee simple property which, by Deed dated June 27, 2017, and recorded in the Land Records of the County of Frederick, Maryland, in Liber 11906, Folio 126, was granted and conveyed by Nicodemus Farm, LLC unto Calatlantic Group, Inc.

Together with the buildings and improvements thereon erected, made or being; and all and every, the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging, or in anywise appertaining.

To Have and To Hold the said tract of ground and premises above described and mentioned, and hereby intended to be conveyed, together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto and to the proper use and benefit of the said Frederick M. Humbert and Kathleen Humbert, as tenants by the entirety unto the survivor of them, his or her heirs and assigns, in fee simple.

And the Grantors hereby covenant that they have not done or suffered to be done any act, matter or thing whatsoever, to encumber the property hereby conveyed; that they will warrant Specially the property hereby granted; and that they will execute such further assurances of the same as may be requisite.

FREDERICK COUNTY CIRCUIT COURT (Land Records) SKD 13963, p. 0044, MSA_CE61_13810. Date available 08/10/2020. Printed 07/03/2025.

In Witness Whereof, Grantors have caused this Deed to be properly executed and sealed the day and year first above written.

Kathleen Gasson Conley by Theodore Conley her attorney in fact

_______________________ (SEAL)
Kathleen Gasson Conley by Theodore Conley,
her Attorney in Fact

Theodore Conley
_______________________ (SEAL)
Theodore Conley

STATE OF MARYLAND
} ss
COUNTY OF FREDERICK

I hereby certify that on this 26th day of June, 2020, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared Theodore Conley, Attorney in Fact for Kathleen Gasson Conley and Theodore Conley, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged the same for the purposes therein contained, and further acknowledged the foregoing Deed to be their act, and in my presence signed and sealed the same, giving oath under penalties of perjury that the consideration recited herein is correct.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

KATRINA S. HALLEIN
Notary Public-Maryland
Frederick County
My Commission Expires
June 09, 2023

_______________________
Notary Public

My Commission Expires: 6/9/23

THIS IS TO CERTIFY that the within Deed was prepared by, or under the supervision of the undersigned, an Attorney duly admitted to practice before the Court of Appeals of Maryland.

_______________________
Katrina Hallein, Attorney

AFTER RECORDING, PLEASE RETURN TO:
**Frederick Humbert**
**814 Holden Road**
**Frederick, MD 21701**

and Records) SKD 13963, p. 0045, MSA_CE61_13810. Date available 08/10/2020. Printed 07/03/2025.

FREDERICK COUNTY CIRCUIT COURT (Land Records) SKD 13963, p. 0046, MSA_CE61_13810. Date available 08/10/2020. Printed 07/03/2025.

MARYLAND FORM **WH-AR**

# Certification of Exemption from Withholding Upon Disposition of Maryland Real Estate Affidavit of Residence or Principal Residence

**2020**

Based on the certification below, Transferor claims exemption from the tax withholding requirements of §10-912 of the Tax-General Article, Annotated Code of Maryland. Section 10-912 provides that certain tax payments must be withheld and paid when a deed or other instrument that effects a change in ownership of real property is presented for recordation. The requirements of §10-912 do not apply when a transferor provides a certification of Maryland residence or certification that the transferred property is the transferor's principal residence.

**1. Transferor Information**

Name of Transferor Kathleen Gasson Conley

**2. Description of Property** (Street address. If no address is available, include county, district, subdistrict and lot numbers).

814 Holden Road, Frederick, MD 21701

**3. Reasons for Exemption**

**Resident Status**

☒ As of the date this form is signed, I, Transferor, am a resident of the State of Maryland.

☐ Transferor is a resident entity as defined in Code of Maryland Regulations (COMAR)03.04.12.02B(11), I am an agent of Transferor, and I have authority to sign this document on Transferor's behalf.

**Principal Residence**

☐ Although I am no longer a resident of the State of Maryland, the Property is my principal residence as defined in IRC 121 (principal residence for 2 (two) of the last 5 (five) years) and is currently recorded as such with the State Department of Assessments and Taxation.

**Under penalty of perjury, I certify that I have examined this declaration and that, to the best of my knowledge, it is true, correct, and complete.**

**3a. Individual Transferors**

[signature]
Witness

Kathleen Gasson Conley
Name **Date

Kathleen Gasson Conley 6/26/20
Signature
by Theodore Conley her attorney in fact.

**3b. Entity Transferors**

Witness/Attest

Name of Entity

By

Name **Date

Title

** Form must be dated to be valid.

**Note:** Form is only valid if it was executed on the date the Property was transferred and is properly recorded with the Clerk of the Court.

**To the Clerk of the Court:** Only an un-altered Form WH-AR should be considered a valid certification for purposes of Section 10-912.

MARYLAND FORM **WH-AR**

# Certification of Exemption from Withholding Upon Disposition of Maryland Real Estate Affidavit of Residence or Principal Residence

**2020**

Based on the certification below, Transferor claims exemption from the tax withholding requirements of §10-912 of the Tax-General Article, Annotated Code of Maryland. Section 10-912 provides that certain tax payments must be withheld and paid when a deed or other instrument that effects a change in ownership of real property is presented for recordation. The requirements of §10-912 do not apply when a transferor provides a certification of Maryland residence or certification that the transferred property is the transferor's principal residence.

**1. Transferor Information**

Name of Transferor Theodore Conley

**2. Description of Property** (Street address. If no address is available, include county, district, subdistrict and lot numbers).

814 Holden Road, Frederick, MD 21701

**3. Reasons for Exemption**

**Resident Status**

[X] As of the date this form is signed, I, Transferor, am a resident of the State of Maryland.

[ ] Transferor is a resident entity as defined in Code of Maryland Regulations (COMAR)03.04.12.02B(11), I am an agent of Transferor, and I have authority to sign this document on Transferor's behalf.

**Principal Residence**

[ ] Although I am no longer a resident of the State of Maryland, the Property is my principal residence as defined in IRC 121 (principal residence for 2 (two) of the last 5 (five) years) and is currently recorded as such with the State Department of Assessments and Taxation.

**Under penalty of perjury, I certify that I have examined this declaration and that, to the best of my knowledge, it is true, correct, and complete.**

**3a. Individual Transferors**

[signature]
Witness

Theodore Conley
Name

**Date 6/26/20

[signature: Theodore Conley]
Signature

**3b. Entity Transferors**

Witness/Attest

Name of Entity

By

Name **Date

Title

** Form must be dated to be valid.

**Note:** Form is only valid if it was executed on the date the Property was transferred and is properly recorded with the Clerk of the Court.

**To the Clerk of the Court:** Only an un-altered Form WH-AR should be considered a valid certification for purposes of Section 10-912.

20-49

FREDERICK COUNTY CIRCUIT COURT (Land Records) SKD 13963, p. 0047, MSA_CE61_13810. Date available 08/10/2020. Printed 07/03/2025.

File No. LS-9035T20

# OWNER OCCUPANCY AFFIDAVIT

Frederick M. Humbert and Kathleen Humbert, the Grantees in the within Deed hereby certify under the penalties of perjury, as evidenced by the joinder herein, that the land conveyed in this Deed is residentially improved owner-occupied real property and that the residence will be occupied by us.

WITNESS:

_______________________ As to All

_______________________ (SEAL)
Frederick M. Humbert

_______________________ (SEAL)
Kathleen Humbert

STATE OF MARYLAND, Frederick, to wit:

I HEREBY CERTIFY, that on this 2nd day of July, 2020, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared Frederick M. Humbert and Kathleen Humbert, the parties herein, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged the foregoing to be their act, and in my presence signed and sealed the same.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Tiphanie J. Lewis-Downs
NOTARY PUBLIC
Washington County
MARYLAND
MY COMMISSION EXPIRES November 9th, 2023

_______________________
Notary Public

My Commission Expires: 11/9/23

FREDERICK COUNTY CIRCUIT COURT (Land Records) SKD 13963, p. 0048, MSA_CE61_13810. Date available 08/10/2020. Printed 07/03/2025.

# State of Maryland Land Instrument Intake Sheet

☐ Baltimore City ☒ County: Frederick

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*

(Type or Print in Black Ink Only—All Copies Must Be Legible)

Space Reserved for Circuit Court Clerk Recording Validation

**1 Type(s) of Instruments**

( ☐ Check Box if addendum Intake Form is Attached.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Deed | | Mortgage | | Other ____ | | Other ____ |
| 2 | Deed of Trust | | Lease | | | | |

**2 Conveyance Type Check Box**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| X | Improved Sale Arms-Length *[1]* | | Unimproved Sale Arms-Length *[2]* | | Multiple Accounts Arms-Length *[3]* | | Not an Arms-Length Sale *[9]* |

**3 Tax Exemptions** (if applicable) Cite or Explain Authority

| | |
|---|---|
| Recordation | |
| State Transfer | |
| County Transfer | |

**4 Consideration and Tax Calculations**

| Consideration Amount | | Finance Office Use Only<br>Transfer and Recordation Tax Consideration | |
|---|---|---|---|
| Purchase Price/Consideration | $ 590,000 | | |
| Any New Mortgage | $ 590,000 | Transfer Tax Consideration | $ |
| Balance of Existing Mortgage | $ | X ( ) % = | $ |
| Other: | $ | Less Exemption Amount – | $ |
| | | Total Transfer Tax = | $ |
| Other: | $ | Recordation Tax Consideration | $ |
| | | X ( ) per $500 = | $ |
| Full Cash Value: | $ | TOTAL DUE | $ |

**5 Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|
| Recording Charge | $ 20.00 | $ 20.00 | Agent: |
| Surcharge | $ 40.00 | $ 40.00 | |
| State Recordation Tax | $ 7,200.00 | $ | Tax Bill: |
| State Transfer Tax | $ 3,000.00 | $ | |
| County Transfer Tax | $ | $ | C.B. Credit: |
| Other | $ | $ | |
| Other | $ | $ | Ag. Tax/Other: |

**6 Description of Property**

SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| | 02-594464 | 12630/422 | | | ☐ (5) |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| | | | | 12630/422 | |

Location/Address of Property Being Conveyed (2)

814 Holden Road, Frederick, MD 21701

| Other Property Identifiers (if applicable) | Water Meter Account No. |
|---|---|
| | |

Residential ☒ or Non-Residential ☐ Fee Simple ☒ or Ground Rent ☐ Amount: N/A

Partial Conveyance? ☐ Yes ☒ No Description/Amt. of SqFt/Acreage Transferred: N/A

If Partial Conveyance, List Improvements Conveyed: N/A

**7 Transferred From**

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| Kathleen Gasson Conley | Frederick M. Humbert |
| Theodore Conley | |
| **Doc. 1 – Owner(s) of Record, if Different from Grantor(s)** | **Doc. 2 – Owner(s) of Record, if Different from Grantor(s)** |
| | |

**8 Transferred To**

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| Frederick M. Humbert | North American Savings Bank, FSB |
| | |

New Owner's (Grantee) Mailing Address

814 Holden Road, Frederick, MD 21701

**9 Other Names to Be Indexed**

| Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|
| | |
| | |

**10 Contact/Mail Information**

Instrument Submitted By or Contact Person

Name: Tiphanie Lewis-Downs

Firm: Lawyers Signature Settlements, LLC

Address: 5300 Westview Drive, Suite 105

Frederick, MD 21703 Phone: (301) 695-1235

☐ Return to Contact Person

☐ Hold for Pickup

☒ Return Address Provided

**11** IMPORTANT: *BOTH* THE ORIGINAL DEED *AND* A PHOTCOPY MUST ACCOMPANY EACH TRANSFER

☒ Yes ☐ No Will the property being conveyed be the grantee's principal residence?

...and Records) SKD 13963, p. 0049, MSA_CE61_13810. Date available 08/10/2020. Printed 07/03/2025.

LR - Deed (w Taxes)
Recording only ST 20.00
Name: humbert
Ref:
LR - Deed (with Taxes)
Surcharge 40.00
LR - Deed State
Transfer Tax 2,950.00
LR - NR Tax - 1kd 0.00
========================
SubTotal: 3,010.00
========================
Total: 3,090.00
08/07/2020 09:10
CC10-EM
#13948532 CC0601 -
Frederick
County/CC06.01.02 -
Register 02

# DOCUMENT VALIDATION

(excluded from page count)

---

## CIRCUIT COURT FOR FREDERICK COUNTY

SANDRA K. DALTON
100 WEST PATRICK STREET
FREDERICK, MD 21701

LAND RECORDING/LICENSING
301-600-1976

FREDERICK COUNTY CIRCUIT COURT (Land Records) SKD 13963, p. 0050, MSA_CE61_13810. Date available 08/10/2020. Printed 07/03/2025.

Case 25-19949 Doc 48-1 Filed 09/26/25 Page 15 of 43

TRUE CERTIFIED COPY

# NOTE

[redacted]

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

| | | |
|---|---|---|
| **August 25, 2023**<br>[Date] | **Moorpark,**<br>[City] | **California**<br>[State] |

**814 Holden Rd, Frederick, MD 21701**
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$664,135.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **PennyMac Loan Services, LLC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.500 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **October 1, 2023.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **September 1, 2053,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 30597**
**Los Angeles, CA 90030**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$3,770.89.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



[redacted]

TRUE CERTIFIED COPY

[redacted]

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The late charge may not be more than **4.000 %** of any installment. Installment is defined as the total of principal, interest, taxes, and insurance. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by me together with this Note, the covenants of the allonge are incorporated into and amends and supplements the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Other [Specify]



[redacted]

TRUE CERTIFIED COPY

[redacted]

**12. V.A. REGULATIONS**

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____________________________________ (Seal)
FREDERICK M. HUMBERT

**Lender: PennyMac Loan Services, LLC**
**NMLS ID:** [redacted]
**Loan Originator: Rhianna Rodriguez**
**NMLS ID:** [redacted]

**[Sign Original Only]**



[redacted]

 [redacted]


Treasurer of Frederick Co., MD
Recordation Tax Pd: $301.00
09/11/2023 MM

Frederick County Circuit Court
IMP FD SURE $40.00
RECORDING FEE $20.00

TOTAL $60.00
SKD CW
Sep 11, 2023 11:21 am

**When recorded, return to:**
**PennyMac Loan Services, LLC C/O Deutsche Bank National Trust Company**
**Attn: Team PennyMac/Correspondent Final Documents**
**1761 E. Saint Andrews Place**
**Santa Ana, CA 92705**

[Space Above This Line For Recording Data] [redacted]

# DEED OF TRUST

[redacted]

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **August 25, 2023,** together with all Riders to this document.

**(B) "Borrower"** is **Frederick M Humbert And Kathleen Humbert as tenants by the entirety unto the survivor of them.**

Borrower is the trustor under this Security Instrument.



[redacted]

Case 25-19949 Doc 48 Filed 09/12/25 Page 59 of 64

**(C)** "**Lender**" is **PennyMac Loan Services, LLC.**

Lender is **a Delaware Limited Liability Company,** organized and existing under the laws of **Delaware.** Lender's address is **3043 Townsgate Road, Suite 200, Westlake Village, CA 91361.**

**(D)** "**Trustee**" is **BWW Law Group, LLC, 4520 East West Highway, Suite 200, Bethesda, MD 20814.**

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. [redacted]
**(F)** "**Note**" means the promissory note signed by Borrower and dated **August 25, 2023.** The Note states that Borrower owes Lender **SIX HUNDRED SIXTY FOUR THOUSAND ONE HUNDRED THIRTY FIVE AND NO/100* * * * * * * * * * * * * *** Dollars (U.S. **$664,135.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full no later than **September 1, 2053.**
**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ Biweekly Payment Rider | ☒ V.A. Rider | |
| ☐ Other(s) [specify] | | |

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M)** "**Escrow Items**" means those items that are described in Section 3.
**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.



[redacted]

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**
[Type of Recording Jurisdiction]
of **Frederick**
[Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

[redacted]

which currently has the address of **814 Holden Rd, Frederick,**
[Street] [City]
Maryland **21701** ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan



[redacted]

current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the



[redacted]

amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance



[redacted]

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that



[redacted]

previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the



[redacted]

following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.



[redacted]

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer,



[redacted]

Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee**



[redacted]

determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.00 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[signature] 8/25/23 (Seal)
FREDERICK M. HUMBERT DATE

[signature] 8/25/23 (Seal)
KATHLEEN HUMBERT DATE

State of MARYLAND
County of Frederick

This record was acknowledged before me this 25th day of August 2023, by FREDERICK M. HUMBERT AND KATHLEEN HUMBERT.

Stamp

MARIA L. STRITE
Notary Public - State of Maryland
Frederick County
My Commission Expires Jan 28, 2025

[signature]
Signature of notarial officer

Notary public
Title of office

My commission expires: 1/28/2025



[redacted]

Case 25-19999 Doc 40-1 Filed 09/12/25 Page 16 of 43

STATE OF PA

County ss: Allegheny
(or City of Baltimore)

I Hereby Certify, that on this 28th day of August 2023 before me, the subscriber, a Notary Public of the State of Pennsylvania and for the county of Allegheny personally appeared, Jay Wild

the agent of the party secured by the foregoing Security Instrument, and made oath in due form of law that the consideration recited in said Security Instrument is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Security Instrument to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Security Instrument; and also made oath that he or she is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

Leslie A. Hramika
Notary Public

My Commission Expires: 12-15-24

Commonwealth of Pennsylvania - Notary Seal
Leslie A. Hramika, Notary Public
Allegheny County
My commission expires December 15, 2024
Commission number [redacted]
Member, Pennsylvania Association of Notaries

**Lender: PennyMac Loan Services, LLC**
**NMLS ID:** [redacted]
**Loan Originator: Rhianna Rodriguez**
**NMLS ID:** [redacted]



[redacted]

Case 25-19949 Doc 40 Filed 01/28/26 Page 20 of 43

Loan Number: [redacted]

Date. 08/25/2023

Property Address. 814 Holden Rd
Frederick, MD 21701

# EXHIBIT "A"

# LEGAL DESCRIPTION

A.P.N. # : [redacted]



[redacted]

Case 25-19949 Doc 40-1 Filed 01/28/26 Page 47 of 43

[redacted]

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **25th** day of **August, 2023,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to **PennyMac Loan Services, LLC, a Delaware Limited Liability Company**

(herein "Lender") and covering the Property described in the Security Instrument and located at

**814 Holden Rd**
**Frederick, MD 21701**

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LATE CHARGE: At Lender's option, and as allowed by applicable state law, Borrower will pay a "late charge" not exceeding **4.000 % of the payment** when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.



[redacted]

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

8/25/23 (Seal)
FREDERICK M. HUMBERT DATE

8/25/23 (Seal)
KATHLEEN HUMBERT DATE



[redacted]

[redacted]

## PLANNED UNIT DEVELOPMENT RIDER

[redacted]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **25th** day of **August, 2023** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **PennyMac Loan Services, LLC, a Delaware Limited Liability Company** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **814 Holden Rd, Frederick, MD 21701.**

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **COVENANTS, CONDITIONS AND RESTRICTIONS**

F.H. K-K (the "Declaration"). The Property is a part of a planned unit development known as ~~PUD~~ Eastchurch

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.



[redacted]

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

[signature] 8/25/23 (Seal)
FREDERICK M. HUMBERT DATE

[signature] 8/25/23 (Seal)
KATHLEEN HUMBERT DATE



[redacted]

# Exhibit A
# Legal Description

Being known and designated as Lot 304, Final Plat, Section 4, Plat 1, Lots 158-165, 297-310, and Open Space, Nicodemus PND — "Eastchurch", according to the plat thereof recorded in Plat Book No. 98, Folio 89, Land Records of Frederick County, Maryland

Being the same property as conveyed from Kathleen Gasson by Theodore Conley as attorney in fact And Theodore Conley to Frederick M Humbert And Kathleen Humbert as tenants by the entirety unto the survivor of them as set forth in Deed Book 13963 Page 44 dated 07/02/2020, recorded 08/07/2020, FREDERICK County, MARYLAND.

Parcel ID: [redacted]

**EXHIBIT B**

# MARYLAND AFFIDAVIT OF REFINANCING EXEMPTION

THE undersigned make(s) oath, under the penalties of perjury, that the following is true to the best of my/our knowledge, information and belief, in accordance with Section 12-108(g)(3) of the Tax-Property Article of the Annotated Code of Maryland as follows.

1. That I/we am/are the original mortgagor or agent of the original mortgagor of the Deed of Trust recorded among the Land Records of **Frederick** County, Maryland in Liber **16247** folio **27** (the "Original Deed of Trust") the security for which is the property having an address of
   **814 Holden Rd**
   **Frederick, MD 21701**
   (the "Mortgaged Property").

2. That the amount of the unpaid outstanding principal balance of the loan secured by the Original Deed of Trust being refinanced in the attached Deed of Trust is **$642,838.59.**

The following applies only when an agent of the original mortgagor is acting on the original mortgagor's behalf:

All statements within this Affidavit are based on a diligent inquiry made by the agent with respect to the facts set forth in the statements; and are true to the best of the knowledge, information, and belief of the agent.

DATED this **25th** day of **August, 2023**

[signature] 8/25/23
**FREDERICK M. HUMBERT** **DATE**

[signature] 8/25/23
**KATHLEEN HUMBERT** **DATE**

**State of MARYLAND**
**County of** Frederick

**This record was acknowledged before me this** 25th **day of** August 2023, **by FREDERICK M. HUMBERT AND KATHLEEN HUMBERT.**

**Stamp**

MAR A L. STR TE
Notary Pu... State of Maryland
F... ...ck County
My Com... Expires Jan 28, 2025

[signature]
**Signature of notarial officer**

Notary public
**Title of office**

**My commission expires:** 1/28/2025

ICE Mortgage Technology, Inc.

[redacted]

MDREFIN 0719
MDREFIN (CLS)

BOOK: 16594 PAGE: 351

# State of Maryland Land Instrument Intake Sheet

☐ Baltimore City ☑ County: Frederick

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*

(Type or Print in Black Ink Only—All Copies Must Be Legible)

Space Reserved for Circuit Court Clerk Recording Validation

**1 Type(s) of Instruments**

( ) Check Box if addendum Intake Form is Attached.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | Deed | ☐ | Mortgage | ☐ | Other ______ | ☐ | Other ______ |
| X | Deed of Trust | ☐ | Lease | ☐ | | ☐ | |

**2 Conveyance Type Check Box**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ✔ | Improved Sale Arms-Length *[1]* | ☐ | Unimproved Sale Arms-Length *[2]* | ☐ | Multiple Accounts Arms-Length *[3]* | ☐ | Not an Arms-Length Sale *[9]* |

**3 Tax Exemptions (if applicable) Cite or Explain Authority**

| | |
|---|---|
| Recordation | |
| State Transfer | |
| County Transfer | |

**4 Consideration and Tax Calculations**

| Consideration Amount | |
|---|---|
| Purchase Price/Consideration | $ |
| Any New Mortgage | $ 664,135.00 |
| Balance of Existing Mortgage | $ 642,838.59 |
| Other: | $ |
| Other: | $ |
| Full Cash Value: | $ |

| Finance Office Use Only Transfer and Recordation Tax Consideration | |
|---|---|
| Transfer Tax Consideration | $ |
| X ( ) % = | $ |
| Less Exemption Amount – | $ |
| Total Transfer Tax = | $ |
| Recordation Tax Consideration | $ |
| X ( ) per $500 = | $ |
| TOTAL DUE | $ |

**5 Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|
| Recording Charge | $ 40.00 | $ | Agent: |
| Surcharge | $ 20.00 | $ | Tax Bill: |
| State Recordation Tax | $ 301.00 | $ | |
| State Transfer Tax | $ | $ | C.B. Credit: |
| County Transfer Tax | $ | $ | |
| Other | $ | $ | Ag. Tax/Other: |
| Other | $ | $ | |

**6 Description of Property**

SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| | [redacted] | | | | ☐ (5) |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| | | | | | |

Location/Address of Property Being Conveyed (2)

814 HOLDEN RD, FREDERICK MD, 21701

| Other Property Identifiers (if applicable) | Water Meter Account No. |
|---|---|
| | |

Residential ✔ or Non-Residential ☐ | Fee Simple ✔ or Ground Rent ☐ | Amount:

Partial Conveyance? ☐ Yes ✔ No | Description/Amt. of SqFt/Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed:

**7 Transferred From**

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| Frederick M Humbert | |
| Kathleen Humbert | |
| **Doc. 1 – Owner(s) of Record, if Different from Grantor(s)** | **Doc. 2 – Owner(s) of Record, if Different from Grantor(s)** |
| | |

**8 Transferred To**

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| PENNYMAC LOAN SERVICES LLC | |
| | |

New Owner's (Grantee) Mailing Address

814 HOLDEN RD, FREDERICK MD, 21701

**9 Other Names to Be Indexed**

| Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|
| | |
| | |

**10 Contact/Mail Information**

| Instrument Submitted By or Contact Person | |
|---|---|
| Name: Katelyn Haspel | ☐ Return to Contact Person |
| Firm TOWNSGATE CLOSING SERVICES, LLC | ☐ Hold for Pickup |
| Address: 420 ROUSER ROAD MOON TWP PA 15108 | |
| Phone (866) 789-1814 | ☑ Return Address Provided |

**11 IMPORTANT: *BOTH* THE ORIGINAL DEED *AND* A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER**

**Assessment Information**

| | | |
|---|---|---|
| ✔ Yes | ☐ No | Will the property being conveyed be the grantee's principal residence? |
| ☐ Yes | ✔ No | Does transfer include personal property? If yes, identify: ______ |
| ☐ Yes | ✔ No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required) |

**Assessment Use Only – Do Not Write Below This Line**

Terminal Verification | Agricultural Verification | Whole | Part | Tran. Process Verification

Transfer Number | Date Received: | Deed Reference: | Assigned Property No.:

| Year | 20 | 20 | Geo. | Map | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

Space Reserved for County Validation

Distribution: White – Clerk's Office; Pink – Office of Finance; Canary – SDAT; Goldenrod – Preparer

AOC-CC-300 (5/2007)

Case 25-19949 Doc 48-1 Filed 10/08/25 Page 42 of 43


Frederick County Circuit Court
IMP FD SURE $40.00
RECORDING FEE $20.00

TOTAL $60.00
SKD JK
Mar 21, 2025 07:29 am

# ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS BENEFICIARY, AS NOMINEE FOR PENNYMAC LOAN SERVICES, LLC, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, all liens, and any rights due or to become due thereon to **PENNYMAC LOAN SERVICES, LLC, WHOSE ADDRESS IS 3043 TOWNSGATE ROAD STE 200, WESTLAKE VILLAGE, CA 91361 (800)777-4001, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust, which was executed by **FREDERICK M HUMBERT AND KATHLEEN HUMBERT** and recorded among the land records of FREDERICK (City), **FREDERICK** (County), **Maryland**, in **Book 16594 and Page 333**.
Modification: 08/30/2024 BK: 17006 PG: 480.
Property is commonly known as: 814 HOLDEN RD, FREDERICK, MD 21701.

**Dated this 20th day of March in the year 2025**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS BENEFICIARY, AS NOMINEE FOR PENNYMAC LOAN SERVICES, LLC, ITS SUCCESSORS AND ASSIGNS**

**LAUREN ASTLE**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 20th day of March in the year 2025, by Lauren Astle as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS BENEFICIARY, AS NOMINEE FOR PENNYMAC LOAN SERVICES, LLC, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**AARON BURDICK**
**COMM EXPIRES: 11/22/2028**

AARON BURDICK
Notary Public - State of Florida
Commission [redacted]
My Comm. Expires Nov 22, 2028
Bonded through National Notary Assn.

When Recorded Return To: PennyMac Loan Services, LLC, C/O Nationwide Title Clearing, LLC 2100 Alt. 19 North, Palm Harbor, FL 34683

[redacted]

Frederick County Circuit Court
IMP FD SURE $40.00
RECORDING FEE $20.00

TOTAL $60.00
SKD CW
Aug 30, 2024 08:55 am

Treasurer of Frederick Co., MD
Recordation Tax Pd: $196.00
08/30/2024 JM

**This document prepared by:**
**PENNYMAC LOAN SERVICES, LLC**
**6101 CONDOR DRIVE, SUITE 200**
**MOORPARK, CA 93021**

**After recording please return to:**
**SERVICELINK** [redacted]
**ATTN: LOAN MODIFICATION SOLUTIONS**
**320 COMMERCE, SUITE 100**
**IRVINE, CA 92602**

*[Space Above This Line For Recording Data]*

**Original Principal Amount $664,135.00**
**Unpaid Principal Amount $659,560.24**
**New Principal Amount $673,132.68**
**Taxable Cap Amount $13,572.44**

[redacted]

[redacted]

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)
### (Principal Residence)

This Loan Modification Agreement ("Agreement"), made this **1st** day of **July, 2024**, between **FREDERICK M. HUMBERT AND KATHLEEN HUMBERT** ("Borrower"), **PennyMac Loan Services, LLC** ("Lender"), and **Mortgage Electronic Registration Systems, Inc. ("MERS")** ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **August 25, 2023** and in the amount of **$664,135.00** and recorded on **September 11, 2023** in Book, Volume, or Liber No. **16594**, at Page **333** (or as Instrument No. **N/A**) , of the **Official** Records of **FREDERICK,MARYLAND** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at:

**814 HOLDEN ROAD, FREDERICK, MD 21701**
[Property Address]

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Property Tax ID No.: [redacted]

[redacted]



[redacted]

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **September 1, 2024**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $**673,132.68**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **7.375%**, from **August 1, 2024**. Borrower promises to make monthly payments of principal and interest of U.S. $**4,649.16**, beginning on the **1st** day of **September, 2024**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **7.375%** will remain in effect until principal and interest are paid in full. If on **August 1, 2054** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

[redacted]



[redacted]

b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e) Borrower agrees that they will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided for signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

g) That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment.

[redacted]



[redacted]

Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

h) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the (Beneficiary) of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. [redacted]

6. Borrower understands that the Note and Security Instrument will not be modified unless and until (i) the Lender accepts this Agreement by signing the Loan Modification Agreement, (ii) the Modification Effective Date (as defined in Section 3) has occurred, and (iii) Bankruptcy Court approval, where applicable, has been obtained and Borrower has timely made all required trial plan payments through Court approval.

7. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

Borrower - **FREDERICK M. HUMBERT** Date: 2 / 25 / 2024

Borrower - **KATHLEEN HUMBERT *SIGNING SOLELY TO ACKNOWLEDGE THIS AGREEMENT, BUT NOT TO INCUR ANY PERSONAL LIABILITY FOR THE DEBT** Date: 7 / 25 / 2024

[redacted]



[redacted]

## ACKNOWLEDGMENT

State of Maryland §
County of Washington §
(or City of Baltimore) §

On this the 25th day of July, 2024, before me Christopher Hofmeister, Notary Public, personally appeared **FREDERICK M. HUMBERT AND KATHLEEN HUMBERT**, known or identified to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he (or they) executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

[signature]
Signature of Officer

Christopher Hofmeister
Printed Name

Sr Relationship Banker, Notary Public
Title of Officer

My Commission Expires: 9/20/2025

**CHRISTOPHER HOFMEISTER**
Notary Public
Washington County
Maryland
My Commission Expires Sept. 20, 2025

(Seal)

[redacted]



[redacted]

Case 25-19999 Doc 40-1 Filed 01/12/26 Page 63 of 64

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE

**PennyMac Loan Services, LLC**

(Seal) -Lender

Karen Denton
First Vice President

By: ______________________

JUL 3 0 2024

______________________
Date of Lender's Signature

**Mortgage Electronic Registration Systems, Inc.**

(Seal) -MERS

Karen Denton
Vice President

By: ______________________

Mortgage Electronic Registration System, Inc., as nominee for **PennyMac Loan Services, LLC**, its successors and assigns

**ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___________ §
§
County of ___________ §

On ______________________ before me, ______________________, Notary Public personally appeared ______________________, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he/she executed the same in his/her authorized capacity on behalf of the corporation, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SEE ATTACHED

______________________
Notary Public

______________________
Printed Name

(Seal)

My Commission Expires: ___________

[redacted]



[redacted]

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Ventura )

On 07/30/2024 before me, Raymond River Navarro , Notary Public
(insert name and title of the officer)

personally appeared Karen Denton,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

RAYMOND RIVER NAVARRO
Notary Public - California
Ventura County
Commission [redacted]
My Comm. Expires Jan 2, 2028

Signature ________________ **(Seal)**

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Ventura )

On 07/30/2024 before me, Raymond River Navarro , Notary Public
(insert name and title of the officer)

personally appeared Karen Denton,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

RAYMOND RIVER NAVARRO
Notary Public - California
Ventura County
Commission [redacted]
My Comm. Expires Jan 2, 2028

Signature (Seal)

Case 25-19949 Doc 18 Filed 10/12/25 Page 33 of 43

[redacted]



[redacted]

# EXHIBIT A

**BORROWER(S): FREDERICK M. HUMBERT AND KATHLEEN HUMBERT**

**LOAN NUMBER:** [redacted]

**LEGAL DESCRIPTION:**

**STATE OF MARYLAND, COUNTY OF FREDERICK, AND DESCRIBED AS FOLLOWS:**

**SITUATED IN THE COUNTY OF FREDERICK, STATE OF MARYLAND.BEING KNOWN AND DESIGNATED AS LOT 304, FINAL PLAT, SECTION 4, PLAT 1, LOTS 158-165, 297-310, AND OPEN SPACE, NICODEMUS PND EASTCHURCH, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK NO. 98, FOLIO 89, LAND RECORDS OF FREDERICK COUNTY, MARYLAND.BEING THE SAME PROPERTY AS CONVEYED FROM KATHLEEN GASSON, BY THEODORE CONLEY, HER ATTORNEY IN FACT AND THEODORE CONLEY TO FREDERICK M. HUMBERT AND KATHLEEN HUMBERT, AS TENANTS BY THE ENTIRETY UNTO THE SURVIVOR OF THEM AS SET FORTH IN DEED BOOK 13963 PAGE 44 DATED 07/02/2020, RECORDED 08/07/2020, FREDERICK COUNTY, MARYLAND.**

**Property Tax ID No.:** [redacted]

**ALSO KNOWN AS: 814 HOLDEN ROAD, FREDERICK, MD 21701**